IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CINDY G. TURNMIRE,                  )
                                    )
     Plaintiff,                     )
                                    )
vs.                                 )
                                    )       No. 05-2923-MaV
JO ANNE B. BARNHART,                )
Commissioner of Social             )
Security,                           )
                                    )
     Defendant.                     )
                                    )

---

REPORT AND RECOMMENDATION

---

Before the court is plaintiff Cindy G. Turnmire's December 9, 2005 complaint for reconsideration of a partial denial of her claim for disability benefits under Title II of the Social Security Act ("Act") by the Commissioner of Social Security ("Commissioner"). Turnmire argues that the administrative law judge's ("ALJ") determination that her disability ceased on May 23, 2005, was not supported by substantial evidence. Turnmire also included in her brief a request for the court to remand this case to the Commissioner of Social Security (1) to consider new and material evidence and (2) because the Commissioner has allegedly failed to produce a sufficient transcript. This matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B)

and (C).  For the reasons that follow, it is recommended that the motion to allow new evidence be denied and the decision of the Commissioner be affirmed.

PROPOSED FINDINGS OF FACT

A.  <u>Procedural History</u>

On November 1, 2002, Turnmire filed an application with the Social Security Administration ("SSA") for Disability Insurance Benefits, alleging a disability onset date of February 26, 2001. (R. at 56.)  The SSA denied her application on April 25, 2003, and also on reconsideration.  (R. at 45, 51.)

On November 26, 2003, Turnmire filed a request for a hearing by an ALJ, which was held on July 1, 2004.  (R. at 16, 35.) Turnmire appeared at the hearing with her attorney, John R. Johnson, III.  (R. at 16.)  The ALJ issued a Notice of Decision on November 16, 2004.  (R. at 12—14.)  The partially favorable decision found, among other things, that (1) Turnmire "was under a disability, as defined by the Social Security Act," from February 26, 2001 to May 22, 2003 and (2) Turnmire "regained the capacity to perform her past relevant work as a receptionist" on May 23, 2003. (R. at 20—21.)  Accordingly, the ALJ decided that Turnmire was entitled to a period of disability and disability insurance benefits from February 26, 2001 to May 22, 2003 and that her entitlement to benefits terminated at the end of July 2003.  (R. at

2

21.)

On January 14, 2005, Turnmire appealed the ALJ's decision to the Appeals Council and submitted additional evidence at that time. (R. at 9, 11.)  The Appeals Council denied Turnmire's request for review and issued to Turnmire a notice of its decision on October 8, 2005.  (R. at 5.)  With the Appeals Council's denial of the request for review, the ALJ's decision became the Commissioner's final decision.  (R. at 5.)

Having exhausted her administrative remedies, Turnmire filed a complaint in this court on December 9, 2005, alleging that the ALJ's November 16, 2004 decision is not supported by substantial evidence.  This court's jurisdiction rests on 42 U.S.C. § 405(g).

B.    Testimony at the Hearing

At the time of the July 1, 2004 hearing, Turnmire was 41 years old.  (R. at 511.)  She did not graduate from high school, but obtained her GED in 1998.  (R. at 511.)  In November of 2002, she began, but did not finish, a course at Plaza Beauty School that would have enabled her to become a teacher.  (R. at 526.)  Turnmire also began, but did not finish, a correspondence course in designing web sites.  (R. at 527—29.)  She did not complete the course because of problems with sitting for long periods of time, memory, and concentration.  (R. at 529.)

From 1988 to 1989, Turnmire worked as a receptionist at a car

3

dealership.  (R. at 538.)  She attended beauty school at some point and began cutting hair in 1990.  (R. at 538.)  She held this position for approximately ten years.  (R. at 512.)  She also worked for Northwest Airlines as a baggage handler.  (R. at 513, 538.)

Turnmire testified about her history of physical problems. She testified to being diagnosed with a herniated disc at the L4/L5 region.  (R. at 512.)  To remedy the pain associated with the herniated disc, Turnmire had a nerve block performed some time before early 2000.  (R. at 512.)  She was scheduled to see Dr. Crouse for another nerve block in early 2000.  (R. at 513.)  The procedure was cancelled, however, because Turnmire was involved in a car accident on May 24, 2000, the day before the procedure was to take place.  (R. at 509, 513.)  According to Turnmire's testimony, the accident caused new pain in her left hip, thigh, and buttocks as well as aggravation of existing pains.  (R. at 513.)  Turnmire also testified that, after the accident, her hip would occasionally pop out of joint and prevent her from walking.  (R. at 513.)

Dr. Albert Crouse and Dr. Philip Green performed several nerve blocks on Turnmire after the accident.  (R. at 514—15.)  Turnmire also tried to remedy her pain with physical therapy, ultrasonic massage, heating pads, and a muscle stimulator.  (R. at 515—18.) According to Turnmire, none of these therapies brought relief.  (R.

4

at 515—18.)

According to Turnmire, the only "long-term relief which [she] has gotten at all is through medication." (R. at 518.) These medications were Neurontin for restless leg syndrome, Oxycontin for pain, Percocet for pain, Effexor to relieve nerve spasms, Klonopin for pain and to aid in sleeping, Xenical for weight loss, Phenergan for nausea, and Prevacid. (R. at 518—22.) The side effects of these various medications are nausea, sleepiness, and confusion. (R. at 522.) According to her testimony, however, the medications did not control her pain. (R. at 521, 524.)

Turnmire told the ALJ that she remains in bed "pretty much all day." (R. at 522.) On a typical day, she only gets out of bed to "unload the dishwasher" and to "eat dinner" because activities such as "[s]timulation, walking, sitting, pushing, pulling," and "stress" aggravate the pain. (R. at 523—24.)

Turnmire testified to several mental and emotional problems in addition to physical problems. She stated that she continues to have nightmares and flashbacks about her car accident. (R. at 525.) As a result, she does not drive much and is afraid of the interstate. (R. at 525.) Turnmire also testified to having crying spells because she "can't do anything" and "doesn't want to be this way." (R. at 525—26.)

Nancy Hughes, a vocational expert, testified about Turnmire's

past work experience and ability to perform work in the future. Hughes testified that Turnmire's job as a barber was a "light, skilled job," that Turnmire's job as a baggage handler was a "medium, semi-skilled" job, and that Turnmire's job as a receptionist was a "sedentary and semi-skilled" job. (R. at 538—39.)

The ALJ then asked Hughes to assume a hypothetical individual of Turnmire's age, education, and work experience who is limited to "sedentary work"[1] and who needs to change positions every thirty minutes by rising "from the seated position to the standing position for five minutes during the course of otherwise sedentary work." (R. at 539.) Based on this assumption, the ALJ asked whether such an individual could find a job and Hughes testified that such an individual could return to a position as a receptionist for a car dealer. (R. at 540.)

Turnmire's attorney then questioned Hughes. Turnmire's attorney asked Hughes to consider an alternate hypothetical in which the individual, rather than standing for five minutes, had to lie down for periods of time. (R. at 540.) Hughes testified that such person would not be employable assuming full credibility of

---

[1]     Sedentary work is defined as "lifting no more than ten pounds at a time and occasionally lifting or carrying articles," and involves sitting with walking and standing required occasionally.  20 C.F.R. § 404.1567(a).

the person's testimony.  (R. at 540.)  Hughes based her opinion on the individual's "frequency or level of her pain," "inability to do anything for up to 15 minutes," the "need to lie down," and the need to take pain medications.  (R. at 540.)

Hughes also testified about the affect on Turnmire in particular because of pain medications.  She testified that Turnmire would have difficulty finding employment due to the sleepiness, confusion, and memory loss caused by the pain medications, as well as by her inability to stay in a sitting position for any period of time.  (R. at 541.)

C.  Medical History

The medical evidence in this case consists of Turnmire's prescription profiles as compiled by Walgreens Pharmacy; "Pricing Worksheets" and "Refill Histories" (also compiled by Walgreens); medical records from Dr. Phillip Green, Turnmire's treating physician at Mid-South Pain and Anesthesia Clinic and at the Germantown Surgery Center; records from Dr. Michael Brewer, Turnmire's treating physician at Collierville Family Medical Center; records from Dr. Manuel Carro, a physician at Semmes Murphey Neurological and Spine Institute ("Semmes Murphey"); and records from Dr. Rodney Olinger, also a physician at Semmes Murphey.

Pharmacy records indicate that between May of 2000 to the

7

present Turnmire has obtained prescriptions for the following medications: Oxycontin, Percocet, Neurontin, Paxil, Klonapin, Clonazepam, Endocet, Celexa, Hydrocodone, Gabitril, Kadian, Promethazine, Biaxin, Diflucan, Alprazolam, Naproxen, Methylprednisolone, Cyclobenzaprine, Ambien, Vioxx, Duragesic, Methadone, Zithromax, and Methocarbamol. (R. at 113—287.) These prescriptions were primarily written by Dr. Brewer. (R. at 113—287.)

Medical Records from Dr. Green indicate that Turnmire visited him several times between May 2001 and June 2002. (R. at 292—308.) Dr. Green noted that Turnmire was experiencing pain in her back and in her left lower extremities. (R. at 292—94, 308.) Dr. Green performed several procedures on Turnmire, including a percutaneous disc decompression, a provocative discogram, and three lumbar epidural steroid injections. (R. at 295—307.) On January 30, 2002, Dr. Green noted that Turnmire did experience improvement in her condition after the percutaneous disc decompression. (R. at 293.) On June 25, 2002, Dr. Green reported, in response to the suggestion that Turnmire try using a spinal cord stimulator, that Turnmire stated she was "currently in litigation" and was "content for now to suffer her current pain . . . ." (R. at 292.)

Dr. Brewer's records indicate diagnoses of chronic back pain, left hip pain, left leg pain, lateral epicondylitis (tennis elbow),

obesity, depression, pharyngitis, and acute bronchitis.  (R. at 312, 314, 316, 318, 320, 328, 345, 347.)  Dr. Brewer also referred Turnmire to Barry T. Kelton of the Collierville Chiropractic Clinic.  (R. at 348.)  According to Dr. Brewer's records, Mr. Kelton advised that it would take at least one or two years to get Turnmire's pain under control. (R. at 350.) As of June 15, 2002, Dr. Brewer's opinion, contained in a treatment plan for Turnmire, was that Turnmire would never return to full work.  (R. at 320.) In a June 19, 2002 letter, Dr. Brewer stated, "I do not think that [Turnmire] will be able to totally get off of some type of pain relief medications and she will not be able to return to a full gainful employment in the future." (R. at 321.) On September 25, 2002, Dr. Brewer recommended that Turnmire "[r]emain off work as she goes through her disability filing." (R. at 316.)  On April 22, 2004, however, Dr. Brewer noted that Turnmire had the capacity to obtain a teaching position in hair dressing. (R. at 451.)  He also concurred with a sedentary RFC assessment on October 21, 2003. (R. at 454.)

Dr. Brewer referred Turnmire to Dr. David Dowling of Spine Memphis.  (R. at 358.)  Dr. Dowling diagnosed Turnmire with clinically discogenic pain at the L4 level on April 21, 2000, corroborated by MRI findings.  (R. at 358.)

Dr. Harry Blumenfeld saw Turnmire in April of 2003, noting

chronic pain syndrome and secondary to degenerative disc disease of the lumbar spine. (R. at 421—22.) His examination, however, found no limitations of motion and a negative straight leg raise. (R. at 421.) In addition to limiting Turnmire to lifting no more than ten pounds occasionally (up to one-third of an eight-hour workday), Dr. Blumenfeld found Turnmire capable of standing and/or walking and sitting for a total of about six hours in an eight-hour workday. (R. at 423—24.)

Dr. Olinger appears to have treated Turnmire between May of 2000 and May of 2003. (R. at 425—34.) In 2000, Dr. Olinger noted disc protrusion at the L4 level of the back and lumbar radiculopathy at L5. (R. at 433.) After observing Turnmire's post-myelogram CT scan, Dr. Olinger stated that it did "not show a definite disc herniation." (R. at 431.) A further abdominal CT scan revealed no significant abnormalities. (R. at 430.) A CT scan of Turnmire's pelvis, however, showed a "small cortical irregularity of the left iliac wing." (R. at 430.) Dr. Olinger followed up with a bone scan and an x-ray of the left hip in August of 2000; both of those tests were negative. (R. at 429—30.)

On March 14, 2002, Dr. Olinger noted Turnmire's hip and leg pain and on May 2, 2002, after performing tests he noted no evidence of new surgical problems. (R. at 427—28.) Dr. Olinger saw Turnmire again on May 22, 2003. (R. at 426.) On seeing

Turnmire, Dr. Olinger noted her physical limitations, but stated that, "there really is nothing that I can do for her."  (R. at 426.)   Also during the visit, Dr. Olinger opined, "Her basic limitations at this time are sitting and standing in one position for no more than 30 minutes at a time, then she can change position, and her weight limitation is 5 pounds."  (R. at 426.)

Dr. Manuel Carro saw Turnmire on September 29, 2003, for an independent medical evaluation.  (R. at 499—500.)  His examination found that Turnmire had "good range of motion of both extremities as well as strength" and that "her strength is well preserved." (R. at 500.)  He also found that Turnmire's straight leg raise was normal, crossed straight leg raise was normal, and that her Patrick's maneuver was negative.  (R. at 500.)  Dr. Carro then recommended certain permanent restrictions.  (R. at 500.)  He recommended, "Sedentary work exerting up to 10 pounds of force occasionally and or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body."  (R. at 500.)

D.   The ALJ's Decision

After considering the record and Turnmire's and Hughes' testimony, using the five-step disability analysis[2] the ALJ

_____

[2]   Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social

concluded that Turnmire was under a disability beginning February 26, 2001 and ending May 22, 2003, "but not thereafter." (R. at 20.)

Under the first step, the ALJ found "no evidence of substantial gainful activity since [Turnmire's] alleged disability onset date." (R. at 16.) Under the second step, the ALJ concluded that Turnmire had a medically determinable severe impairment; Turnmire suffered from degenerative disc disease of the lumbar spine. (R. at 17.) The ALJ deemed this impairment "severe," as defined in the Act, because it produced "more than a minimal affect on [Turnmire's] ability to engage in work activity." (R. at 17.) In reaching that conclusion, the ALJ summarized the observations and diagnoses of Drs. Olinger, Green, Brewer, Blumenfeld, and

---

Security Regulations. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. *Id.* § 404.1520(c). Second, a finding must be made that the claimant suffers from severe impairment. *Id.* Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. *Id.* §§ 404.1520(d), 404.1425, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. *Id.* § 404.1520(e). If the ALJ finds the claimant unable to perform past relevant work, then, at the fifth step, the ALJ must discuss whether the claimant can perform other work which exists in significant numbers in the national economy. *Id.* § 404.1520(f).

Carro.   (R. at 17—18.)

Under the third step, the ALJ concluded that Turnmire did not
have an impairment that met or equaled the criteria of any listed
impairment.  (R. at 18.)  Accordingly, he had to then determine
whether Turnmire retained the residual functional capacity to
perform past relevant work or could adjust to other work.  (R. at
18.)  Under Social Security Ruling 96-6p the ALJ considered the
opinions of the state agency medical consultants "regarding the
nature and severity of the claimant's impairments."  (R. at 18.)
Those consultants found, without examination, that Turnmire was
"capable of lifting 50 pounds occasionally, 25 pounds frequently,
and standing, walking, or sitting up to six hours in an eight-hour
day."  (R. at 18.)  The ALJ noted, however, that they did not
examine Turnmire nor have the benefit of subsequent medical
evidence that might have changed their opinions.  (R. at 18.)

The ALJ concluded that during the period prior to May 23,
2003, Turnmire was limited to less than sedentary work because
physically her ability to perform a full range of sedentary work
was compromised significantly.  (R. at 19—20.)  The ALJ did find
that medical evidence supported her allegations of pain prior to
May 23, 2003.  (R. at 18.)  Hughes' testimony as a vocational
expert was an important factor in the ALJ's decision, as he found
Hughes to be qualified and her opinions reliable.  (R. at 19.)

13

Hughes testified that the hypothetical situation, based on Dr. Olinger's May 22, 2003 limitations of changing position every thirty minutes within sedentary work, permitted Turnmire to do her past relevant work as a receptionist, which is classified as sedentary. (R. at 19.) The ALJ acknowledged, however, Hughes' testimony that if the hypothetical was modified so that needed to lie down every thirty minutes instead of changing positions, there were not any existing jobs for that limitation. (R. at 19.) Given that the ALJ gave greater weight to Turnmire's credibility prior to May 23, 2003, he found that based on Hughes' classification of Turnmire's prior work as sedentary, the requirements of her prior work exceeded her residual functional capacity ("RFC") during that period. (R. at 19.)

At the fifth step, based on the less than sedentary RFC, being a younger individual, having a high school education, and with non-transferable skilled work experience, there were not any jobs existing in significant numbers that Turnmire was capable of performing. (R. at 19.) The ALJ relied on section 201.00(h) of Appendix 2 to Subpart P of Regulations No. 4 and Social Security Ruling 96-9p[3] to find Turnmire disabled because none of the rules

---

[3]     SSR 96-9p allows the a finding that an individual is limited to less than a full range of sedentary work depending on the nature and extent of their functional limitations or restrictions. *See generally* S.S.R. No. 96-9p, 1996 SSR LEXIS 6.

14

in Appendix 2 applied to her.  (R. at 19—20.)

The ALJ concluded, however, that after May 22, 2003, Turnmire's RFC was a full range of sedentary work which did not preclude her from engaging in her past relevant work as a receptionist.  (R. at 19—20.)  The ALJ found that Turnmire had a medical improvement by that date which allowed her to regain the ability to do a substantial range of sedentary work.  (R. at 19.) Specifically, he found her to have the ability to lift no more than five pounds, stand and walk up to two hours, and sit up to six hours in an eight-hour day.  (R. at 20.)  That RFC assessment, according to Hughes, would permit her to do her prior work as a receptionist.  (R. at 20.)  He declined to give Turnmire full credibility as to her subjective allegations for the period beginning May 23, 2003.  (R. at 18.)  Accordingly, she was not disabled as of that date.

The ALJ focused on several specific pieces of evidence to support this determination.  Though initially the medical evidence supported her allegations of pain, after May 22, 2003, the evidence was found to undermine her alleged continuing symptoms.  (R. at 18.)  The ALJ mentioned the possibility of addiction to pain medications due to Turnmire's frequent usage of prescription medications.  (R. at 18.)  The ALJ also found Turnmire's refusal to use a spinal cord stimulator and concomitant statement to Dr. Green

15

that she was willing to "suffer" her current pain to suggest "secondary gain and manipulative behavior." (R. at 18.)

The ALJ also noted that particularly beginning in May of 2003, the doctors did not seem to fully accept Turnmire's allegations of symptoms and limitations. (R. at 18.) Dr. Blumenfeld's April 2003 examination of Turnmire indicated no limitations in range of motion, a negative straight leg raise, and that Turnmire was capable of standing and walking for up to six hours and sitting up to six hours in an eight-hour day. (R. at 17.) Dr. Blumenfeld's opinion led the ALJ to determine that as of April 1, 2003, Turnmire had "capacity to do sedentary work." (R. at 19.) Dr. Olinger's May 22, 2003 examination of Turnmire and Dr. Carro's September 29, 2003 examination of Turnmire also led the ALJ's determination of Turnmire's capacity to do sedentary work beginning May 23, 2003, as well as supported the finding of medical improvement. (R. at 19.) The ALJ also relied on Dr. Brewer's April 22, 2004 note that Turnmire could get a teaching position in hair dressing. (R. at 18.)

Additionally, the ALJ noted that the absence of documented treatment in the past eighteen months reinforced the conclusion that Turnmire had a medical improvement and regained the ability to do sedentary work. (R. at 19.) This absence, according to the ALJ "means the absence of signs and findings. The absence of signs and

16

findings equates to a lessening of the severity of the earlier signs and findings." (R. at 19.)

Accordingly, the ALJ held that Turnmire was disabled and entitled to disability benefits from February 26, 2001 through May 22, 2003. (R. at 21.) Her disability ended on May 22, 2003, however, and thus her "[e]ntitlement to benefits terminated with the close of July 2003, the second month following the month in which the disability ceased." (R. at 21.)

### PROPOSED CONCLUSIONS OF LAW

Turnmire takes issue with the determination that there was a cessation of her disability, arguing that there was not substantial evidence to support the decision that her disability ceased as of May 23, 2003. (Pl.'s Br. 15.) Specifically, she argues that there is not substantial evidence that her medical condition, i.e. her pain, improved. (Pl.'s Br. 16—19.) Turnmire contends that the ALJ based his determination of her improvement in pain on an incorrect assessment of her credibility, namely that it was an incorrect assumption that she did not receive treatment for an eighteen-month period and that she had an impure motive by declining the spinal cord stimulator. (Pl.'s Br. 16—17.) She also argues that more weight should have been afforded to her treating physicians Dr. Olinger and Dr. Brewer to support her allegations of pain. (Pl.'s Br. 17—18.)

17

A.   <u>Consideration of New and Material Evidence</u>

As an initial matter, the court must determine whether additional evidence submitted to the Appeals Council requires a sentence six remand under 42 U.S.C. § 405(g). After the ALJ issued his decision but before the Appeals Council issued its denial of review, Turnmire submitted additional evidence consisting of a December 15, 2004 letter from Dr. Brewer. (R. at 4, 501.) In this letter, Dr. Brewer states that Turnmire continues to be under a "considerable amount of pain." (R. at 501.) After addressing Turnmire's attempt to return to work and her current medications, he concludes, "At this time [Turnmire] is not able to have gainful employment . . . ." (R. at 501.)

Turnmire argues in her brief that the letter is "highly significant" and that it in the event the court does not find that her disability continued past May 22, 2003, then the court should remand the case to the Commissioner and order consideration of the new evidence.[4] (Pl.'s Br. 20—21). She contends that this new opinion by Dr. Brewer is based on actual fact, as opposed to his April 2004 letter which was based on predictions, and that as a treating physician his opinion should be afforded "controlling weight." (Pl.'s Br. 20.) According to Turnmire, the ALJ's

---

[4]   While not specifically referenced, Turnmire's request is made pursuant to 42 U.S.C. § 405(g).

decision would have likely been different on the cessation issue if he had the benefit of the new letter. (Pl.'s Br. 21.) In support of "good cause," she states that the letter could not have been obtained prior to the ALJ's decision because it was based on her attempt to work during the intervening time period. (Pl.'s Br. 21.)

The Commissioner concedes that the letter is "new," but argues that it is not "material" because it does not address Turnmire's condition prior to the ALJ's decision. (Mem. Supp. Comm'r Decision 8—9.) Instead, the Commissioner advises that Turnmire should file a new application. (Mem. Supp. Comm'r Decision 9.)

In her reply, Turnmire contends that the evidence is "material" because Dr. Brewer changed his opinion based on events subsequent to the ALJ's decision. (Reply Br. 4.) Turnmire argues that her attempt to return to work failed, thus Dr. Brewer's prediction of improvement was not realized. (Reply Br. 4.)

When an Appeals Council denies review of a claim, Sixth Circuit precedent does not allow a district court to consider new evidence first submitted to the Appeals Council in the court's determination of whether substantial evidence supports the ALJ's decision. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *see also Cotton v. Sullivan*, 2 F.3d 692, 695—96 (6th Cir. 1993). A court may, however, remand the case for an administrative

hearing in light of new evidence. *Cline*, 96 F.3d at 148; *Cotton*, 2 F.3d at 696. That type of remand, commonly referred to as a "sentence six" remand, is made without making any substantive ruling as to the correctness of the Commissioner's decision and orders that additional evidence be taken before the Commissioner. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see also* 42 U.S.C. § 405(g). It is appropriate "when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).

The claimant bears the burden of proving that the remand is appropriate. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Section 405(g) specifically requires that a claimant show that (1) new material evidence is available, and, (2) good cause exists for the failure to incorporate such evidence into a prior proceeding. 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Under the first requirement, evidence is "new" if it did not exist or was not available to the claimant at the time of the ALJ proceeding. *Foster*, 279 F.3d at 357; *see also Finklestein*, 496 U.S. at 626. The evidence is "new" only if it is not cumulative of existing evidence in the record. *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D.

Tenn. 2002).

New evidence is "material" if there is a reasonable probability of a different disposition of the claim if the new evidence is presented. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  The evidence must concern the claimant's condition during the time at issue before the ALJ. *Pickard*, 224 F. Supp. 2d at 1171; *see also Sizemore*, 865 F.2d at 712.  Evidence will not be considered "material" if it only concerns a subsequent deterioration or a change in the claimant's condition after the hearing, because such evidence does not demonstrate when the disability began. *Sizemore*, 865 F.2d at 712; *Pickard*, 224 F. Supp. 2d at 1171.

The Sixth Circuit takes a strict approach for the second prong and requires that a claimant prove "good cause" by showing a reasonable justification for not acquiring prior to, or presenting the evidence at, the ALJ hearing. *Willis*, 727 F.2d at 554; *see also Foster*, 279 F.3d at 357 (finding no good cause where claimant's reason for not presenting the evidence earlier was that the ALJ failed to respond to requests for additional testing, noting the claimant bears the burden of providing a complete record); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (finding no good cause where claimant gave no explanation for why medical tests performed after the final

decision could not have not have been obtained prior to the hearing). The mere fact that the additional evidence did not exist at the time of the ALJ's decision does not establish "good cause." *Pickard*, 224 F. Supp. 2d at 1171.

Here, the Commissioner concedes that the Dr. Brewer's letter is "new," thus the dispute centers on whether the letter is "material." This court submits that Turnmire has not met her burden to prove the evidence is material. First, the letter is dated after the ALJ's decision and does not address the relevant time period that was before the ALJ. Dr. Brewer specifically states in the letter that "at this time" Turnmire was not able to work. Turnmire argues that Dr. Brewer changed his earlier opinion and thus it does relate to a prior time, but Dr. Brewer failed to address his earlier opinion on her ability to work or specifically state that his earlier opinion was incorrect. This indicates that the letter only addresses a change in Turnmire's condition, and thus is not material.

Second, this court submits that there is not a reasonable probability that the letter would have caused the ALJ to reach a different disposition. The ALJ's decision as to Turnmire's ability to return to sedentary work was largely based on the opinions of Drs. Blumenfield, Carro, and Olinger, who all gave specific assessments on Turnmire's ability to do work-related activities.

22

The ALJ referred to Dr. Brewer's April 22, 2004 opinion, which stated that Turnmire could return to teaching, as consistent with Dr. Olinger's RFC assessment.  That April 2004 letter, however, was not the basis of the ALJ's decision nor did it provide an assessment of her RFC; thus, a new letter by Dr. Brewer which also does not include a RFC assessment would be unlikely to change the ALJ's decision.

Turnmire argues that this new letter should get controlling weight because Dr. Brewer is a treating physician, and thus would likely change the outcome of the ALJ's decision.  This court disagrees.  While it is true that treating sources' medical opinions are generally afforded more weight, they are only afforded "controlling weight" if the ALJ finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the case record.  20 C.F.R. § 404.1527(d)(2).  The lack of "detailed, clinical, diagnostic evidence" can render a treating physician's opinion less creditworthy.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997).  An ALJ is not bound by unsupported conclusory statements.  *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  Here, the new letter would likely get little weight because there is not any indication that there were diagnostic techniques used to

23

support his opinion, and, instead, seems to be based on Turnmire's subjective complaints.  The letter only contains a conclusion that she is unable to work, but shows no objective support for that conclusion.   It is also inconsistent with Dr. Brewer's earlier statement that she could return to work and would likely receive little weight because of that inconsistency.   Further, other medical evidence that was considered by the ALJ, which also noted her pain but failed to show objective evidence to support the pain, was used to discredit Turnmire.   Thus, this new letter which likewise does not have supporting objective findings would only lend more support to the ALJ's decision to not give Turnmire full credibility.

The main point of Dr. Brewer's letter, his statement that she is unable to work, is arguably not even a proper "medical opinion" under the regulations, but instead is a vocational assessment that is reserved to the ALJ.  The regulations define medical opinion as a "statement[] from physicians . . . that reflect[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairments(s), and your physical or mental restrictions."   20 C.F.R. § 404.1527(a)(2).   A medical source's statement that a claimant is disabled or unable to work is not a medical opinion, however, because it relates to an issue that "would direct the

determination or decision of disability." 20 C.F.R. §
404.1527(e)(1). Dr. Brewer's new letter only states his ultimate
conclusion that Turnmire is unable to work, but does not give a
detailed RFC assessment on her limitation. This statement that
Turnmire is not able to work will not necessarily direct a finding
of disabled.

It is submitted that the new letter from Dr. Brewer is not
material because it does not pertain to the relevant time period
and is not reasonably likely to have changed the ALJ's decision.
Accordingly, this court recommends that the request to remand the
case for consideration of new evidence under sentence six of 42
U.S.C. § 405(g) be denied.

B.   Standard of Review

Judicial review of the Commissioner's decision is limited to
whether there is substantial evidence to support the decision, and
whether the Commissioner used the proper legal criteria in making
the decision. 42 U.S.C. § 405(g); *Barker v. Shalala*, 40 F.3d 789,
794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th
Cir. 1990). Substantial evidence is more than a scintilla of
evidence but less than a preponderance, and is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d

524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Abbott*, 905 F.2d at 923. If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

C.   <u>Medical Improvement</u>

A disabled person is not entitled to continuous disability benefits if the disability dissipates to the point that the person is able to do gainful work. *Booms v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 739, 744 (E.D. Mich. 2003). A person is no longer disabled if (1) there has been a medical improvement in the impairment and (2) that medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(a). A "medical improvement"

is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision." *Id.* § 404.1594(b)(1).  The decrease is medical severity must be on the basis of improvements in symptoms, signs, and/or laboratory findings.  *Id.*  The comparison point date is the most recent favorable medical decision where the person was found to be disabled.  *Booms*, 277 F. Supp. 2d at 745. In a closed period case where the ALJ found a medical improvement occurred in the same decision as the initial disability determination, the proper comparison point is the onset date.  *Id.*

Here, there is substantial evidence to support a finding that Turnmire had a medical improvement in her pain.  The ALJ relied on Dr. Olinger's May 22, 2003 note and Dr. Carro's report, which both assessed her RFC as sedentary and did not provide any objective findings that validated her complaints of pain.  This is in contrast to earlier records from 2001 and 2002 which stated that Turnmire was unable to work based on her pain and included objective findings to support her pain.  For example, Dr. Brewer stated that Turnmire would not be able to work because of her pain in 2002, though in late 2003 and April of 2004 he was of the opinion she could return to work.  Dr. Olinger noted pain to palpation in her left illiac crest in late 2000.  Dr. Green diagnosed her as having neuropathic lumbar radicular pain in May of

2001, which he noted continued January of 2002 though slightly improved.  MRI's confirmed her bulging disks.

Further, the ALJ found that Turnmire's credibility as to her allegations of pain was reduced because of her possible prescription medication addiction, her lack of treatment for eighteen months, and her refusal to accept the spinal cord stimulator offered by Dr. Green.  The ALJ also discredited her allegations of pain because there was not any objective medical evidence to support her allegations as of May 23, 2003.

Subjective complaints of pain can support a claim of disability.  *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986).  In *Duncan*, the Sixth Circuit established the following analysis for evaluating a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain . . . . The standard does not require, however, "objective evidence of the pain itself."

*Id.* at 853 (citations omitted).  Though the ALJ did not specifically apply *Duncan*, the findings of fact are sufficient to

address the issue.  When the *Duncan* analysis is properly applied, there is substantial evidence in the record to support the ALJ's determination that Turnmire's pain was not disabling as of May 23, 2003.  Under the first prong, whether there is an underlying medical condition which could reasonably be expected to produce the symptoms alleged, the ALJ acknowledged the existence of a severe impairment of degenerative disc disease of the lumbar spine. Accordingly, the first prong of the Duncan analysis is met.

The finding that Turnmire's subjective allegations of pain and inability to work were not supported by objective medical evidence is tantamount to a finding that the second prong was not met. Under the first part of the second prong, there is not any medical evidence that confirms the severity of the alleged pain as of May 23, 2003.  The records note negative straight leg raises and no limitations in range of motion.  That is in contrast to earlier medical records which did contain objective medical tests that confirmed the pain.  Under the second part of the second prong, there is substantial evidence showing that Turnmire's condition is not so severe as to be reasonably expected to produce disabling pain.  Instead, the evidence at the time of the cessation date shows that notwithstanding her pain, Turnmire is able to perform sedentary work.  This is in contrast to earlier reports that she could not work.  In fact, Dr. Brewer in 2002 stated that she would

not be able to work, but in late 2003 and April of 2004 he opined that she could perform sedentary work and could teach hair dressing.

An ALJ's credibility determination is given great deference because the fact finder has the unique opportunity to observe and evaluate the witness, and his assessment need only be supported by substantial evidence. *See Walters*, 127 F.3d at 531; *Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

Here, the ALJ did have substantial evidence to discount Turnmire's credibility. The ALJ found a suggestion of manipulative behavior in her likely addiction to pain medication and her refusal of the spinal cord simulator. Her statement that she was content to endure the pain could be construed to different meanings, but the ALJ's interpretation of it is subject to great deference, especially in light of the fact that there was a lack of objective findings to support her allegations of pain.

In viewing all of the evidence, this court does recognize that the ALJ may have been mistaken as to the lack of treatment for

eighteen months.[5]  The ALJ noted that this lapse of continuous treatment for eighteen months indicated an absence of signs and findings to support her pain.  There are medical records from Dr. Brewer, however, which go beyond May of 2003, though many of them appear to be follow-ups for obtaining prescriptions.  If the ALJ was mistaken as to the absence of treatment for eighteen months, that alone is not significant enough to detract from the evidence supporting his credibility determination.  An ALJ's mistake as to a fact on the record does not justify overturning a finding that is otherwise supported by substantial evidence.  *See, e.g.*, *Hawkins v. Sec'y of Health & Human Servs.*, Case No. 89-1438, 1989 U.S. App. LEXIS 19091, *12 at n.1 (6th Cir. 1989) (unpublished decision) (finding an ALJ's reference to a non-existent negative test result was harmless error when the reference was made in a list of missing medical evidence); *Diorio v. Heckler*, 721 F.2d 726, 728—29 (11th Cir. 1983) (finding ALJ's incorrect statements about a claimant's age and work history harmless error when ALJ used correct age and history in Medical-Vocational analysis and when the Medical-Vocational guidelines were superfluous to the disability determination).  Here, there is substantial evidence to support the

---

[5]     Neither party addressed when the eighteen month period began and ended, but it appears that it began in May of 2003 and ended in November of 2004, the month the ALJ issued his decision.

31

ALJ's credibility determination as stated herein.

This court submits that there is substantial evidence in the record to discredit claimant's allegations of severe pain as of May 23, 2003, and to support the ALJ's credibility determination. Further, because she was not afforded full credibility as of May 23, 2003, there was substantial evidence to support she was able to return to a full range of sedentary work and would be able to perform her prior work as a receptionist, as determined by Hughes through the use of a hypothetical situation.[6]

D.   <u>Sufficiency of the Hearing Transcript</u>

Lastly, Turnmire argues that an additional ground for remand

---

[6]     Substantial evidence of a claimant's residual functional capacity may lie in the testimony of a vocational expert in response to a hypothetical question that accurately portrays the claimant's individual physical and mental impairments. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Davis s. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical question must be supported by evidence in the record. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). The hypothetical question posed to a vocational expert should contain accurate summations of the evidence already presented in the record and should neither add to nor detract from that evidence. *Myers v. Weinberger*, 514 F.2d 293 (6th Cir. 1975). However, if the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Hardaway*, 823 F.2d at 927—28. A vocational expert's testimony may supply sufficient evidence that other work is available which a claimant can perform. *Bradford v. Dep't of Health & Human Servs.*, 803 F.2d 871 (6th Cir. 1986).

exists because portions of the hearing transcript was inaudible. (Pl.'s Br. 22.)   A remand based upon a transcript with inaudible portions is only appropriate where the omitted portions would bolster the claimant's arguments or prevent judicial review. *Williams v. Barnhart*, 289 F.3d 556, 556 (8th Cir. 2002); *see, e.g., Marshall v. Schweiker*, 688 F.2d 55, 56 (8th Cir. 1982) (affirming Commissioner's decision notwithstanding several pages of illegible medical records because there was enough other evidence to support the decision and no indication the illegible records would have aided the claimant); *Gossens v. Sec'y of Health & Human Servs.*, Case No. G84-1156 CA, 1987 U.S. Dist. LEXIS 14308, at *8 (W.D. Mich. Aug. 7, 1987) (denying remand where the thirty-four omissions did not hinder the court's review of the record); *cf. Stewart v. Harris*, 509 F. Supp. 31, 33 (N.D. Cal. 1980) (finding inaudible notations of a large portion of the claimant's testimony prevented an adequate review and made it impossible to determine if substantial evidence supported the determination).

The omitted testimony of Hughes does not warrant remand in this case.   Those portions do not prevent this court from comprehending Hughes' testimony.   It is apparent that Hughes' testimony was essentially that given full credibility of the hypothetical claimant, the claimant would not be able to return to prior work under the hypothetical as modified by Turnmire's

33

attorney.   The relevant issue here is Turnmire's credibility, because only if she is fully credible would the ALJ use that portion of Hughes' testimony to find she was only able to perform a limited range of sedentary work.   The omitted portions of the transcript are not relevant to Turnmire's credibility and thus do not hinder a review of the credibility determination. *See Andres v. Bowen*, 682 F. Supp. 996, 998 (E.D. Mo. 1988) (finding that in relation to a modified hypothetical posed to a vocational expert that depended on claimant's full credibility, which a large portion of was not in the record, the "key to fair judicial review" is the ability to review the credibility determination).   Accordingly, this court submits that the case should not be remanded on the basis of inaudible portions of the transcript.

CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed and that the motion to consider new evidence be denied.

IT IS SO ORDERED this 15th day of March, 2007.

s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

34